UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:15-CR-26-TLS |
| | ) | |
| CAMARI STINSON | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Camari Stinson's Verified Petition to Withdraw Guilty Pleas [ECF No. 109], filed on April 30, 2018. The Court, having reviewed the parties' written submissions and the transcript of the change of plea hearing, and having conducted an evidentiary hearing on the matter, now denies the Defendant's request to withdraw his pleas of guilty to Counts I, II, and III of the Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

**BACKGROUND**

On May 27, 2015, the Defendant was charged in a three-count Indictment with being a felon in possession of a firearm from December 29, 2014, continuing to February 25, 2015 (18 U.S.C. § 922(g)(1)), distributing a controlled substance on January 29, 2015 (21 U.S.C. § 841(a)(1)), and possession of a firearm in furtherance of the January 29 drug trafficking crime (18 U.S.C. § 924(c)). A jury trial was scheduled to begin on December 5, 2017. On November 30, 2017, the Defendant filed a Motion to Plea[d] Guilty to Counts II and III [ECF No. 93]. The Defendant stated that he wished to enter pleas of guilty to Counts II and III without the benefit of

a plea agreement, which would leave Count I, the felon in possession charge, for trial. On December 1, the Court conducted a telephonic status conference and set the change of plea hearing for December 4.[1]

On December 4, 2017, the Defendant entered pleas of guilty without the benefit of a plea agreement to all three counts before the undersigned judge. A sentencing hearing was scheduled for March 29, 2018. A probation officer prepared a Presentence Investigation Report, to which the Defendant filed objections. The objections centered around the recitation of the offense conduct, particularly as it related to relevant conduct for the felon in possession charge, including whether the Defendant used the firearm in an attempted murder that resulted in serious bodily injury. With respect to conduct during the January 29, 2015, drug transaction, the Defendant's only objection was to the factual assertion that he made comments about his involvement in the shooting prior to the CI and to the undercover agent completing the controlled buy.

The Court scheduled an evidentiary hearing to address the objections, but vacated it after the Defendant expressed a desire to withdraw his guilty plea. In his Verified Petition to Withdraw, the Defendant asserted that his cousin's death plunged him into depression at a time

---

[1] If the Defendant admitted the conduct that forms the basis of Counts II and III, distributing cocaine and carrying a firearm in relation to that distribution on January 29, 2015, he would necessarily also admit that he possessed a firearm on that date. As January 29 falls within the time frame alleged in the Count I felon in possession charge—December 29, 2014, continuing to February 25, 2015—the first element of Count I would have been established by the Defendant's guilty plea to Count III. *See United States v. Allen*, 383 F.3d 644, 646–47 (7th Cir. 2004) (citing the three elements of a felon in possession of a firearm offense under § 922(g)(1): (1) the defendant possessed a firearm; (2) the firearm had traveled in or affected interstate commerce; and (3) the defendant had previously been convicted of a felony); *Cf. United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002) (noting that a defendant can only be charged with separate § 922(g) offenses for the same firearm if possession was interrupted and the defendant reacquired the firearm).

when he was attempting to wean himself from prescribed anti-depressant medication. He further asserted that this caused "an inability in my mind to be properly prepared for trial in this case" and feeling "pressured to plead guilty . . . as my only remaining option." (Verified Pet. 1.) The Defendant maintains that he "did not commit these offenses, such that all required elements could be proven beyond a reasonable doubt." (*Id.* at 2.)

The Court took the Petition under advisement and set the matter for an evidentiary hearing to further develop the record, specifically identifying several issues that remained unclear from the Verified Petition. At the June 15, 2018, hearing the Government presented the testimony of Agent Wayne Lessner from the Bureau of Alcohol, Tobacco, Firearms, and Explosives to address the Defendant's claim that he is innocent of the charges to which he pled guilty. The Defendant did not present testimony. At the conclusion of the hearing, neither party requested the opportunity to submit additional briefing, but opted to rely on the presentations made to the Court.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 11 governs a defendant's request to withdraw a plea of guilty. It allows a defendant to withdraw a plea of guilty after the court accepts the plea and before sentence is imposed if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Seventh Circuit has "frequently observed that a defendant does not have an absolute right to withdraw a plea before sentencing, although the court may allow him to do so if he has a fair and just reason for doing so." *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008) (quotation marks, citations, and brackets omitted);

3

*United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). "Because the defendant's statements at a plea colloquy are presumed to be true, the defendant bears a heavy burden of persuasion in showing that such a fair and just reason exists." *Chavers*, 515 F.3d at 724 (citing *United States v. Logan*, 244 F.3d 553, 558 (7th Cir. 2001)). Requiring that the defendant have a "fair and just" reason to withdraw an accepted plea is consistent with the requirement that, before any plea is accepted, the defendant has sworn in open court that he actually committed the crimes, he has stated that he is pleading guilty because he is in fact guilty, he has stated that he is pleading guilty voluntarily, the court has advised him of his trial rights, the court has advised him of any maximum possible penalty, the court has explained the terms of any plea agreement provision waiving the right to appeal, and the court has found a factual basis for the plea. *See* Fed. R. Crim. P. 11(b) (setting forth requirements for considering and accepting a guilty plea).

> Given the great care with which pleas are taken under . . . Rule 11, there is no reason to view pleas so taken as merely tentative, subject to withdrawal before sentence whenever the government cannot establish prejudice. Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a grave and solemn act, which is accepted only with care and discernment.

*United States v. Hyde*, 520 U.S. 670, 676–77 (1997) (quotation marks and brackets omitted) (citing Advisory Committee explanation for adding "fair and just" language to Rule 32(e) (now Rule 11(d)).

It is within the court's discretion whether to hold a hearing on the plea's validity. *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015) (citing *United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004)).

4

## ANALYSIS

In his Verified Petition to Withdraw Guilty Plea, the Defendant does not point to any deficiency in the Court's colloquy during the change of plea hearing on December 4, 2017. That is, he does not allege that the Court failed to follow Rule 11 of the Federal Rules of Criminal. Rather, his claim is that personal circumstances led him to plead guilty as his "only remaining option" despite the fact that he had intended to defend the charges at trial because he is innocent. (Verified Pet. ¶¶ 4, 7, 8.) He points specifically to his attempts to "ween [sic] [himself] off of a prescribed anti-depressant medication (Celexa)" in advance of his trial date. (*Id.* ¶ 5.) The Defendant states that, in the meantime, the shooting death of his cousin in Fort Wayne "plunged [him] into a significant depression" and caused him to "become suicidal." (*Id.* ¶ 6.) According to the Defendant's Petition, with his "trial date approaching and an inability in [his] mind to be properly prepared for trial . . . [he] felt pressured to plead guilty," and thus did so "in the belief that it was [his] only remaining option." (*Id.* ¶ 7.)

A "fair and just reason" for the withdrawal of a guilty plea is that the plea was involuntary. *United States v. Nash*, 29 F.3d 1195, 1198 (7th Cir. 1994). The Defendant's Petition does not convince the Court that the statement he made under oath when he entered his guilty pleas were false. Nor do they suggest to the Court that he was unable to comprehend what he was doing when he entered those pleas. First, as the Court noted in the written order setting the evidentiary hearing, the Defendant's Petition left unanswered what led him to alter his prescribed medication regime in advance of trial. Neither did it provide the identity of his cousin, the date the shooting occurred, or whether the Defendant reported his suicidal thoughts to medical personnel, or others, at the jail. The Court thought that these question, and others, required an

evidentiary hearing. The Court also noted that, importantly, the source of the "pressure" to plead guilty, or what the Defendant meant by "pressure," had not been adequately developed for the Court to find that his previous in-court, sworn statements that he actually committed the crimes, and was pleading guilty voluntarily, should be discounted as falsehoods.

The Defendant did not attempt to answer any of these lingering questions during the evidentiary hearing that the Court set into this matter to address the Defendant's request to withdraw his guilty pleas. Moreover, having depression, by itself, would not be an indicator to this Court that the Defendant was unable to voluntarily enter a plea of guilty. *See United States v. Dyer*, 2018 WL 2944316, at *3 (7th Cir. June 13, 2018) (noting that "defendants with mental illnesses can and often do enter knowing and voluntary pleas, so long as the judge can determine that the defendant is able to understand and participate in the proceedings" (citing as an example *United States v. Woodard*, 744 F.3d 488, 496 (7th Cir. 2014))). As in *Dyer*, the Defendant here "points to no evidence that his judgment was significantly impaired during . . . the colloquy. Rather, the transcript shows that the [judge] thoroughly assessed [the Defendant's] ability to understand his rights." *Id.*

At the time he changed his pleas to guilty, the Defendant advised that he was taking Celexa for depression and anxiety. (Plea Hr'g Tr. 6.) He stated that he had been taking the medication since being in custody on the pending criminal charges. (*Id.* at 7.)[2] The Court inquired whether the medication affected the Defendant's "ability to understand the proceedings in your case today?" (*Id.*) The Defendant responded that they did not, and affirmed that he was, in the Court's words, "of a clear mind." (*Id.*) Neither of the party's counsel had any concerns

---

[2] The Defendant has been in custody since his arrest on March 9, 2017.

6

about the Defendant's ability to proceed in the matter, or his ability to understand what was happening with the change of plea. (*Id.* at 7–8 (THE COURT: You believe he's fully competent and is able to understand the significance of this proceeding? ATTORNEY JOHN BOHDAN: Very much so.").) Additionally, the Defendant confirmed that he had not been threatened or forced in any way to plead guilty, and that no promises or assurances had been made to persuade him to plead guilty. (*Id.* at 18–19.) Rather, he was pleading guilty of his own free will. (*Id.* at 19.)

### B. Actual Innocence Claim

In the Court's order setting the evidentiary hearing, the Court noted the Defendant's assertion that he is "innocent of these charges" and "did not commit these offenses, such that all required elements could be proven beyond a reasonable doubt." (Verified Pet. ¶ 8.) The Court acknowledged that actual and legal innocence have been recognized as legitimate grounds for the withdrawal of a guilty plea. *See United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010). However, "'bare protestations of innocence' are insufficient to withdraw a guilty plea, particularly after a knowing and voluntary plea made in a thorough Rule 11 colloquy." *Chavers*, 515 F.3d at 725 (quoting *United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005)). The defendant claiming actual innocence "must proffer some credible evidence." *Carroll*, 412 F.3d at 792 (citing *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002)).

In *Carroll*, the defendant's denial of guilt contradicted his earlier sworn testimony during the plea colloquy, and ignored the evidence that the government would have offered at trial. *Id.* The Seventh Circuit said that the "district court was thus understandably skeptical of the claim of

innocence, especially since it came only after [the Defendant] saw the presentencing report." *Id.* Likewise, here, the Defendant's denial of guilt comes after receiving a presentence report to which he lodged objections regarding relevant conduct that enhanced his offense level. The denial of guilt also contradicts his earlier sworn testimony, and ignores the evidence that the Government would offer at trial. The Government described this evidence during the change of plea hearing as follows:

> The Government would present evidence that on January 29th, 2015, ATF arranged a controlled delivery of cocaine from Camari Stinson to a confidential informant.
>
> Special Agent Wayne Lessner was acting in an undercover capacity and drove the CI to an address on Smith Street, where they picked up Camari Stinson. Smith Street is located in Fort Wayne in the Northern District of Indiana.
>
> Mr. Stinson got into the undercover vehicle, and the vehicle was equipped with both video and audio recording capabilities, and the transaction was, in fact, captured on video and audio, and that would be presented at trial.
>
> Mr. Stinson directed Special Agent Lessner, who was driving the vehicle, to wait about 15 minutes and then drive them to an address on Lily Street, which is also in Fort Wayne in the Northern District of Indiana.
>
> Mr. Stinson had a Smith and Wesson .40 caliber firearm on his person in the pocket of his sweatshirt when he got into the undercover vehicle, and removed the firearm from his sweatshirt pocket and showed it to the confidential informant.
>
> Upon arrival at Lily Street, Mr. Stinson got out of the undercover vehicle and met with an individual. Mr. Stinson had that firearm on his person when he left the vehicle. After a few minutes, Mr. Stinson returned to the vehicle, got inside and then provided a baggie containing a white powder material to the confidential informant, who then weighed it. Money was exchanged.
>
> That white -- that baggie with the white powder was later submitted to the Indiana State police for testing. Tests confirmed the baggie was found to contain cocaine, a controlled substance. The examination also revealed the presence of a non-controlled substance mixed with the controlled substance cocaine, and the net weight of the material was 3.38 grams.
>
> After the deal was complete, Mr. Stinson again removed the firearm at the request

> of the confidential informant, and showed it to him. And then Mr. Stinson at the end of the transaction left the vehicle with the firearm.
>
> Special Agent Lessner would testify that firearms are tools of the trade for drug traffickers, that people who distribute drugs often carry firearms to protect themselves and their product from being robbed, and that carrying a firearm during a drug trafficking crime facilitates or has the power to facilitate the drug trafficking crime.
>
> ATF Special Agent Thomas Kaiser is a firearms expert, and Nexus expert. It would be expected that he would testify that he conducted a test fire of the Smith and Wesson semi-automatic pistol, model SD40VE, which was a .40 caliber, and that it functioned as designed, and therefore, meets the definition of a firearm under federal law.
>
> Special Agent Kaiser would also testify that he conducted a nexus examination of the firearm, and determined that it was manufactured by Tri-Town Plastics in Connecticut, and, therefore, having the gun in the presence of the State of Indiana in January of 2015, it would have traveled in or affected interstate commerce.
>
> Government will also present testimony from a Probation Officer who would testify that Mr. Camari Stinson, the defendant in this case is the same Camari Stinson, who was convicted in the Allen Superior Court, Court 4 Fort Wayne, under cause 02D04-0707-FD620 of possession of marijuana, a felony, and that conviction was on January 15, 2008, and therefore, his possession in January of 2015 at the time he was prohibited based on that prior felony conviction.
>
> Thank you. I'm sorry, a certified copy would also be admitted, Your Honor, of that conviction.

(Plea Hr'g Tr. 24–27.) The Court asked the Defendant if he agreed with the Government's summary of what he did with regard to each of the charges. He conferred with counsel, and then stated that he agreed. The Court asked if there was anything with which he disagreed. Counsel for the Defendant told the Court that the Defendant indicated that he agreed with the summation of his activities and involvement, but did not know one way or another about Agent Lessner's anticipated testimony about firearms being tools of the drug trade. The Court confirmed that Agent Lessner's testimony was the Defendant's only concern.

9

During the change of plea hearing, the Defendant admitted all of the essential elements of each crime. At the conclusion of the hearing, the Court asked, "Mr. Stinson, do you have any questions with regard to any of the statements, any of the questions, any of the matters pertaining to your presentation of the guilty plea as to these 3 counts." (*Id.* at 31.) The Defendant answered, "No, Your honor." (*Id.*)

Responding to the Defendant's claim that he should be allowed to withdraw his guilty plea because he is actually innocent, the Government presented at the evidentiary hearing on the Defendant's Petition to Withdraw Guilty Pleas the testimony of Agent Lessner, the undercover agent who was with a confidential informant and the Defendant when the Defendant procured cocaine for the informant. The Government also entered as exhibits images from the video of the inside of the undercover vehicle after the Defendant obtained the cocaine from the other vehicle. They showed the Defendant holding what the agent testified was cocaine, as well as a firearm. The Government also verified that Agent Lessner had obtained a certified copy of a 2008 judgment against the Defendant for a felony conviction.

The Defendant has not presented any evidence to refute that he has a prior felony conviction and was, accordingly, a person prohibited from possessing a firearm. The Defendant's cross-examination of Agent Lessner included whether he was able to determine the functionality of the firearm on that date and, thus, appeared targeted at the definition of a firearm as one of the required elements that the Defendant may believe cannot be established beyond a reasonable doubt. The Seventh Circuit has "rejected the contention that the government must prove that the gun was operable, because it is sufficient to show that the gun was designed to fire." *United States v. Alanis*, 265 F.3d 576, 592 (7th Cir. 2001) (internal quotation marks and citation

omitted). The agent testified that he is very familiar with firearms, and that the weapon was a .40 caliber Smith and Wesson. Additionally, as noted above, another agent test fired the firearm and determined that it functioned as designed.

As a final note, the Court acknowledges the Defendant's assertions that, before he pled guilty, it was his intention to defend himself at trial. This does not have any tendency to suggest actual innocence, or involuntariness. "[D]efendants who once asserted their innocence often change their plea, and there was no reason for" this Court "to find that phenomenon unusual in this case." *Dyer*, No. 17-1580, 2018 WL 2944316, at *4 (stating that a defendant's "sudden change of heart" when he pled guilty despite prior protests of innocence was "no anomaly" that required a more thorough plea colloquy). Likewise, the claim of unidentified pressure that accompanied his approaching trial date, and the inability in his mind to be prepared for trial, is a nonstarter. The Defendant had no issues with seeking, or obtaining, continuances of his previous trial dates. He sought, and received, eleven such continuances leading up to the December 2017 trial date. (*See* Mots. to Continue, ECF Nos. 17, 21, 25, 40, 42, 50, 53, 60, 67, 72, and 75.)

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Verified Petition to Withdraw Guilty Pleas [ECF No. 109]. The evidentiary hearing to address the Defendant's objections to the Presentence Investigation Report will be set by separate entry.

SO ORDERED on June 21, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT