# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CAUSE NO.: 1:15-CR-26-TLS |
| CAMARI STINSON | |

## OPINION AND ORDER

The Defendant, Camari Stinson, has pleaded guilty to unlawful possession of a firearm by a felon from December 29, 2014, continuing to February 25, 2015 (18 U.S.C. § 922(g)(1)), distributing a controlled substance on January 29, 2015 (21 U.S.C. § 841(a)(1)), and possession of a firearm in furtherance of the January 29 drug trafficking crime (18 U.S.C. § 924(c)).

The Defendant's plea of guilty to the charged offense of being a felon in possession of a firearm did not include as a factual basis any conduct related to a shooting on December 29, 2014. When the probation officer drafted a Presentence Investigation Report (PSR) in preparation for sentencing, it included as relevant conduct the Defendant's participation in a shooting on December 29, 2014. The Defendant objects to the inclusion of these factual statements and the resulting enhancements to his guideline range.

This Opinion and Order resolves the Defendant's objection to the PSR.

## BACKGROUND

The PSR contains a description of the offense conduct based on information that federal agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) obtained from a Confidential Informant (CI) through that CI's reports, his monitored meetings with the Defendant, and a controlled drug buy, in which an undercover ATF agent also participated. The

offense conduct also contains information arising out of a traffic stop of a vehicle in which the Defendant was a passenger on February 25, 2015. The probation officer noted the following:

> For guideline calculation purposes, offense conduct, including all relevant conduct, involves the defendant's use of the above firearm in an attempted murder resulting in serious bodily injury to the victim of the offense. In addition, this officer will consider the fact that the defendant distributed 3.38 grams of cocaine. As confirmed by the government and investigative documents, the defendant shot multiple times and told the CI that he was trying to kill the victim. He further stated he shot someone "in the ass" when he was at his cousin's 16th birthday party on December 29, 2014. The CI relayed this information to ATF and was sent back to get these admissions on an audio recording on January 15, 2015. On said date, the defendant had the firearm on him and showed it to the CI and indicated it was the one used in the shooting. In addition, on January 29, 2015, when the defendant delivered cocaine to the CI, in the presence of the UC, he again talked about using the gun to shoot someone. He had the firearm on his person at the time and showed it to the CI and UC. This interaction was both video and audio recorded. The victim was shot in the buttocks and had to go to the hospital to have the bullet removed.

(PSR ¶ 25.)

The relevant conduct impacted the base offense level. When calculating the offense level, the probation officer wrote,

> The guideline for a violation of 18 U.S.C. § 922(g)(1) is USSG §2K2.1. Pursuant to USSG §2K2.1(c)(1)(A), §2X1.1 and then §2A2.1 are referenced when determining the offense level. USSG §2A2.1 provides a base offense level of 27. The base offense level is then derived from an offense level 27 plus 2 because the victim sustained serious bodily injury. USSG §§2A2.1(a)(2) and (b)(1)(B).

(PSR ¶ 31 (setting base offense level at 29).)

The Defendant filed an objection to the PSR that centers around the recitation of the offense conduct, particularly as it relates to relevant conduct for the felon in possession charge, including whether the Defendant used the firearm in an attempted murder that resulted in serious bodily injury.[1] The Defendant also filed a motion to withdraw his guilty pleas.

---

[1] The Defendant also objected to the two-level increase in criminal history points under USSG § 4A1.1(d) based on the fact that he committed the instant offense while he was under a criminal justice sentence. That objection is no longer at issue. (*See* Reply 1, ECF No. 155 (acknowledging that he was under a criminal justice sentence and withdrawing the objection).)

After conducting an evidentiary hearing, the Court denied the Defendant's motion to withdraw his guilty pleas [ECF No. 117], and set an evidentiary hearing on the objection to the PSR. The objection now having been fully briefed, is ripe for the Court's consideration.

**ANALYSIS**

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (citing *Nelson*, and setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence). This Opinion and Order is intended to resolve the issues related to the first step, calculation of the Guidelines range.

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012).

The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (citation and quotation marks omitted); *see also United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ("Sentencing judges necessarily have 'discretion to

draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'") (quoting *England*, 555 F.3d at 622). As such, "[a] district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, the court may rely on it. *Id.* However, it is the Government's burden to prove by a preponderance of the evidence that an enhancement applies. *United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006); *United States v. Foutris*, 966 F.2d 1158, 1160 (7th Cir. 1992).

Generally, the federal sentencing guideline applicable to a violation of 18 U.S.C. § 922(g)(1), prohibiting possession of a firearm by a felon, is § 2K2.1, which provides for varying base offense levels depending on the offense and offender characteristics. *See* USSG § 2K2.1(a), (b). Additionally, § 2K2.1(c) provides for a "Cross Reference," authorizing a sentencing court to look to other guidelines provisions to impose a higher sentence on an offender under certain circumstances. The "Cross Reference" provision states that "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense . . . apply (A) § 2X1.1 (Attempt, Solicitation or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." "Another offense" is defined as "any federal, state, or local offense . . . regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1, Application Note 14(C)). In determining whether subsection (c)(1) applies, a court must "consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles, *See* § 1B1.3(a)(1)–(4) and accompanying commentary." *Id.*,

Application Note 14(E); *see also* USSG § 1B1.3(a) (instructing courts to consider all "relevant conduct" in determining the base offense level, specific offense characteristics, and cross reference adjustments).

Section 2X1.1, in turn, assigns offense levels for offenses of attempt, solicitation, or conspiracy not covered by a specific offense guideline. USSG § 2X1.1(b). This section, furthermore, contains its own cross-reference provision: "When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section," the sentencing court must apply that guideline section. USSG § 2X1.1(c). Because § 2A2.1 expressly covers the offense of attempted murder, a sentencing court must apply that section rather than § 2X1.1(b). Under § 2A2.1, a defendant receives a base offense level of 27 for attempted murder that does not qualify as first degree murder. USSG § 2A2.1(a)(2). The offense level is further increased by 2 levels if the victim sustained serious bodily injury. USSG § 2A2.1(b)(1).

The Government's position is that the relevant conduct in this case involves the Defendant's use of the firearm cited in the offense of conviction to attempt a murder that, if accomplished, would have constituted second degree murder. Because his actions resulted in serious bodily injury, two levels are added for a base offense level of 29. The Government argues that it is not required to prove that a bullet from the Defendant's firearm struck the victim, only that he used the firearm, and that this use constituted the offense of attempted murder. The Defendant, in addition to claiming that there is no way to establish by a preponderance of the evidence that a bullet from his weapon caused injury to any person on December 29, 2014, claims that he was not even present during the shooting.

Evidence that the Defendant was present during the December 29, 2014, shooting consists of two varieties: first, the Defendant's own statements to others, namely the CI and the undercover agent; second, ballistics testing that matched cartridge cases collected at the scene of the shooting to the firearm that the Defendant possessed in January 2015.

With respect to his statements, the Defendant testified that he only told the CI that he was involved in the shooting to enhance the Defendant's credibility with the CI, who the Defendant had known for some time and understood was affiliated with a gang from Hammond (9/7/18 Tr. 35–36 ("I was just trying to look cool. Like, where I'm from, you know, if people think that you done something, even if you didn't do it, if they think you done it or anything like that, you have a tendency to be left alone or you look cool in certain people's eyes, you know. Some of my stories, I was just trying to add up to his stories.").) He claimed that he knew details about the shooting from other sources and from Facebook. The Defendant also discounts the second type of evidence that has a tendency to connect to him to the shooting. He testified that he obtained the firearm that is the subject of this case at some point in January 2015.

The Government contends that the Defendant's assertions are not believable. "The chance that Stinson would take responsibility for a shooting he did not commit, that would be privy to extensive details of the shooting even though he had not spoken to his cousin in years, and that he would just happen to purchase the firearm used in the shooting just a couple of weeks later, from some stranger somewhere on the south side of Fort Wayne is astronomical." (Gov't Mem. 20.) The Court agrees that there is evidence from which one could suspect that the Defendant was the shooter for one of the five guns that was fired near Taylor Street on the evening of December 29, 2014. But the evidence is not as convincing as the Government presents. The Court heard evidence from the Defendant that he was not present at the date and

time in question. He was at a house located in that area earlier in the day, but only stayed for a short time to wish his niece a happy birthday. The person hosting the party confirmed this. The Court is entitled to give weight to this testimony, particularly as there were no other witnesses that testified that the Defendant was at the scene. The dark and grainy footage of the shooting obtained from a surveillance camera does not confirm any particular person's participation in the shooting.

It is feasible that many of the details of the shooting, particularly given its magnitude and the number of people involved, could have been learned from social media and other sources. The Defendant's unwillingness to specifically identify those individuals does not convince the Court that they do not exist. Nor is it unbelievable that the Defendant would have taken credit for the shooting to give himself more credibility and standing among other persons known to engage in criminal conduct. The Defendant's inability to identify the exact date on which he purchased the firearm, or from whom, could just have readily been a function of the illicit and informal nature of the transaction, as well as the significant passage of time. The evidence, when weighed, does not convince the Court that it is more likely than not that the Defendant was one of the shooters at Taylor Street, and that the shooting should be used as relevant conduct for purposes of computing the Defendant's sentence. Because the Court finds that there is not sufficient evidence in the record before the Court to find by a preponderance of the evidence that the Defendant was present at the Taylor Street shooting, the Court need not address which criminal offense the conduct would have constituted, or whether it resulted in serious bodily injury.

The guideline range in this case should reflect that the Defendant distributed cocaine, that he possessed a firearm in furtherance of that drug trafficking offense, and that he was a person who was prohibited from possessing a firearm, having previously been convicted of a felony.

**CONCLUSION**

Based on the foregoing, the Court SUSTAINS the Defendant's objection to the PSR related to the base offense level for the felon in possession of a firearm offense, specifically that its calculation should not be based on a shooting that occurred on December 29, 2014. The PSR will be revised accordingly.

SO ORDERED on April 22, 2019.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
